IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JUSTIN KADEEM KRUEL                                                                                PLAINTIFF

v.                                        Civil No. 5:24-cv-05016-TLB-CDC

JOHN DOE CORRECTIONS OFFICERS,
Benton County Detention Center (BCDC);
JOHN DOE DEPUTIES, Benton County
Sheriff's Department; SHERIFF SHAWN
HOLLOWAY, Benton County, Arkansas;
TRINITY SERVICE GROUP, INC., Food
Service Contractor; CAPTAIN HAROLD
GAGE, BCDC; LIEUTENANT WYATT
BANTA, BCDC; NATURAL STATE PEST
CONTROL; JACK COUCH, Maintenance
Supervisor BCDC; SERGEANT GREG
HOBELMEN, BCDC; DEPUTY MOORE,
BCDC; DEPUTY WARD; and
LIEUTENANT ROSS                                                                                    DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Justin Kadeem Kruel ("Kruel"), under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Kruel's Second Amended Complaint is before the Court for preservice screening pursuant to 28 U.S.C. § 1915A.[1]  Under § 1915A, the Court is required to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

---

[1] Enacted as part of the Prison Litigation Reform Act.

## I. BACKGROUND

Kruel filed this case on January 18, 2024. The Complaint (ECF No. 1) was screened and several claims and Defendants were dismissed. (ECF Nos. 6 & 8). The only claim that remained after screening was Kruel's claim against the John Doe Officers and Deputies of the BCDC based on the conditions under which Kruel was confined. *Id.* Kruel was directed to file an Amended Complaint regarding his conditions of confinement claims. (ECF No. 7). The Order included explicit and detailed instructions as to what must be included in the Amended Complaint. *Id.* Specifically, the Order stated:

> In the Amended Complaint, Plaintiff must write short, plain statements telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the Defendant who violated the right; (3) exactly what the Defendant did or failed to do; (4) how the action or inaction of that Defendant is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of that Defendant's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); Fed. R. Civ. P. 8. Plaintiff must repeat this process for each person he has named as a Defendant.
>
> Plaintiff is **CAUTIONED** that he must affirmatively link the conduct of each named Defendant with the specific injury he suffered. If he fails to do, the allegations against that Defendant will be dismissed for failure to state a claim.
>
> The Plaintiff must clearly designate on the face of the document that it is a First Amended Complaint. The First Amended Complaint must be retyped or rewritten in its entirety on the court-approved form. Plaintiff **may not incorporate any part of the original Complaint.**
>
> A First Amended Complaint supersedes, or takes the place of, the original Complaint. After amendment, the Court will treat the original Complaint as nonexistent. Any cause of action that was raised in the original Complaint is waived if it is not raised in the First Amended Complaint.

*Id.*

The Amended Complaint was to be filed by March 15, 2024. *Id.* Kruel failed to file the Amended Complaint and a Show Cause Order was entered. (ECF No. 9). Kruel responded to the Show Cause Order but did not submit his Amended Complaint or explain why he failed to submit

it in a timely manner. (ECF No. 10). To ensure procedural fairness, Kruel was given until April 25, 2024, to file his Amended Complaint. (ECF No. 11).

This time, Kruel timely filed his Amended Complaint. (ECF No. 12). The Amended Complaint was screened and Kruel's claims about not being furnished with counsel, the amount and type of his bond, speedy trial violations, and unlawful detention were dismissed. (ECF Nos. 13 & 16). This left Kruel's claims against the John Doe Officers and Deputies of the BCDC based on his conditions of confinement and the alleged use of force, threats, and intimidation by the John Doe Defendants. *Id.* Defendant Holloway was added as a Defendant and the Amended Complaint was served on him. (ECF No. 14). In the Order directing service, Defendant Holloway was directed to identify:

(1) any officers who have been involved in the use physical force against the Plaintiff since October of 2023 for which an incident report was prepared or a grievance was submitted;

(2) the name of the jail administrator;

(3) the name of the individual or individuals responsible for food quality and quantity at the detention center;

(4) the name of the individual or individuals responsible for the provision of hygiene products and cleaning supplies (not the names of personnel merely distributing the products and supplies); and

(5) the name of the individual or individuals responsible for pest control at the facility.

(ECF No. 14). Defendant Holloway provided the specified information in his Answer filed on July 22, 2024. (ECF No. 19).

The following day, an Order was entered providing the names of the individuals and businesses identified by Defendant Holloway to the Plaintiff and giving him until August 13, 2024, to file a Second Amended Complaint substituting in place of the John Doe Defendants any of the identified individuals or businesses he desired to assert claims against. (ECF No. 20). Kruel was

again given explicit instructions regarding the required contents of the Second Amended Complaint. *Id.* Kruel failed to file the Second Amended Complaint and a Show Cause Order was entered. (ECF No. 24). Kruel was given until September 16, 2024, to respond.

On September 11, 2024, Kruel filed his Second Amended Complaint naming as Defendants all individuals identified by Defendant Holloway and Defendants Moore and Ward. (ECF No. 25). According to the allegations of the Second Amended Complaint, Kruel is a pretrial detainee incarcerated in the Benton County Detention Center ("BCDC"). (ECF No. 25 at 2). In Claim One, Kruel alleges that between October and November of 2023, Deputy Ward had him taken out of the pod and "verbally abused me causing actions of excessive force by intimidation." *Id.* at 4. Kruel indicates he submitted a "paper" grievance about this matter. Next, Kruel asserts that between January and March, Defendant Moore took him out of the pod and "verbally insulted me and sent me to echo (the hole)." *Id.* at 4-5. When Kruel insisted on writing a grievance, he alleges Defendant Moore "threatened me before the first incident and also implied nothing will happened even if I write a grievance on him, it'll just get t[h]rown away." *Id.* at 5. Finally, in June of 2024, Kruel states he was sent to the hole and punished without a disciplinary hearing by Defendant Ross "who sent S.W.A.T. and C.E.R.T. into our pod with excessive force while I was wrongfully accused." *Id.*

In Claim Two, Kruel alleges that the food provided by Defendant Holloway and Defendant Trinity Service Group, Inc. ("Trinity") is not intended for human consumption; the food does not meet the caloric needs of the detainees; the portions provided to detainees are inconsistent; the fruit tastes rotten; they are served expired food; hair has been found in the food; the food is uncooked; and the food trays are not clean. (ECF No. 25 at 6-7).

In Claim Three, Kruel contends conditions inside the pod are unsanitary. (ECF No. 25 at 8). Specifically, he alleges there are bugs and insects all over the place; the cleaning supplies are inadequate; the hygiene supplies are inadequate; and even indigent inmates are forced to purchase hygiene products such as soap and shampoo. *Id.* Kruel further alleges that their mats and blankets are taken away as punishment and detainees are forced to sleep on "dirty hard metal bunks." *Id.*

Kruel has sued the Defendants in both their individual and official capacities. (ECF No. 25 at 5, 7 & 8). As relief, Kruel seeks compensatory damages in the amount of 30 million dollars for physical, mental, and emotional pain, defamation of character, and the loss of personal dignity. *Id.* at 9.

## II.  LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting*

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III.  ANALYSIS

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) each defendant acted under color of state law, and (2) that he or she violated a right secured by the constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

#### A.  Verbal Abuse and Threats

Kruel contends that Defendants Ward and Moore verbally harassed and threatened him. In general, "[v]erbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *see also Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (abusive language or verbal harassment is not, by itself, unconstitutional and will not support a civil rights cause of action). Moreover, fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest. *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir. 1997)

A narrow exception to this general rule is recognized when a verbal threat rises to the level of a "wanton act of cruelty which . . . was brutal despite the fact that it resulted in no measurable

physical injury to the prisoners." *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986) (guard, using a racial epitaph, pointed a cocked weapon at a black prisoner and told him to run so he could blow the prisoner's brains out). The Eighth Circuit held that "a prisoner retains at least the right to be free from the terror of instant and unexpected death at the whim of his allegedly bigoted custodians." *Id*. The conduct of Defendants Ward and Moore amounts to nothing more than verbal harassment which is not actionable.

The only mention of Defendant Gage is in Claim One when Kruel alleges the deputies who verbally abused him worked for Defendant Gage. A supervisor may be held liable only for his own direct action or his failure to properly train or supervise the offending employees who caused the constitutional violation. *Jackson v. Nixon,* 747 F.3d 537, 543 (8th Cir. 214). As no constitutional claim exists for the verbal abuse and threats made by Defendant Gage's employees, he cannot be held liable.

No plausible claim is stated against Defendants Ward, Moore, or Gage.

### B. Punished without Due Process

Kruel alleges that in June of 2024 he was "sent to the hole and punished without a disciplinary even after [he] pleaded [he] was innocent to Lt. Ross who sent S.W.A.T. and C.E.R.T. into our pod with excessive force while [he] was wrongfully accused." (ECF No. 25 at 5).

It is well settled that a pre-trial detainee may not be punished without first providing him due process. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Pretrial detainees are presumed innocent and cannot be punished for the crime for which they have been charged. *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). "[T]he effective management of the detention facility once the individual is confined is a valid objective that may justify the imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as

punishment." *Id.* at 540. Conditions or restrictions that are "reasonably related to a legitimate governmental objective" such as institutional order and security do not amount to punishment. *Id.* at 539-40; *see also Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992) ("We do not quarrel with the prison's need to segregate individual inmates from the general prison population for non-punitive reasons; for example ... where there is a threat to the safety and security of the institution"). If the conditions or restrictions are deemed punishment, the pretrial detainee is entitled to due process. When a detainee "is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand." *Id.* In *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974), the Supreme Court held that pretrial detainees are entitled to an impartial due process hearing on disciplinary matters. *See also Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008). These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Id.*; *see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

Here, Kruel has alleged he was accused of wrongdoing by Defendant Ross and then moved to the hole without a disciplinary being issued. This is sufficient to state a plausible Due Process violation. *Wolff,* 418 U.S. at 563-67. A plausible claim is stated against Defendant Ross.

### C. Inadequate Nutrition and Food Service

Kruel has alleged multiple problems with the food service including inadequate nutrition, the provision of undercooked, expired, and rotten food, dirty food trays, and the presence of foreign material (hair) in the food. The Fourteenth Amendment's prohibition against punishment of pretrial detainees applies to the conditions under which they are confined. *Karsjens v. Lourey,* 988

8

F.3d 1047, 1052 (8th Cir. 2021) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 (1979) (conditions of confinement violate due process if they amount to punishment of the detainee)); *see also Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 908-09 (8th Cir. 2020).

The Eighth Circuit in *Stearns* stated:

> In *Bell v. Wolfish*, the Supreme Court articulated the standard governing pretrial detainees' claims related to conditions of confinement. The Court held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536-37. The Court articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. *Id*. at 538. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id*. at 538-39. If conditions are found to be arbitrary or excessive, it is permissible to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id*. at 539.

*Stearns*, 957 F.3d at 907 (alterations in original) (citations to the Supreme Court Reporter omitted).

Prisoners have a right to adequate nutrition. *Campbell v. Cauthron,* 623 F.2d 503, 508 (8th Cir. 1980) (Eighth Amendment case). "Conduct that is merely negligent or grossly negligent does not implicate the protections of the Due Process Clause." *Jackson v. Buckman,* 756 F.3d 1060, 1067 (8th Cir. 2014). *See e.g., Samuel v. Doe,* Civil No. 4:23-cv-824, 2023 WL 6814168, *1 (E.D. Ark. Sept. 15, 2023) (mere negligence in allowing a cockroach to get on detainee's food tray).

While the presence of hair in Kruel's food tray and the provision of expired food sounds in negligence, the Court can conceive of no legitimate governmental purpose in providing food lacking in caloric content, in providing an insufficient quantity of food to meet the caloric needs of the detainees, or in providing food that is undercooked, rotten, or has foreign material in it, or in using unsanitary food trays.

9

The Court turns to whether Kruel has alleged a sufficient causal connection between the identified constitutional violation, *i.e.,* the problems with food service, and Defendants Holloway and Trinity.  Kruel has sued Defendant Holloway in both his official and individual capacities.  "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."  *Elder-Kee v. Aksamit,* 460 F.3d 979, 986 (8th Cir. 2006) (citation omitted).  Contracting out the provision of essential services such as food service to detainees does not relieve Benton County of its constitutional obligation to provide adequate nutrition.  *West v. Atkins,* 487 U.S. 42, 56 (1988).  The County remains responsible for its own policies and practices if conditions fall below a constitutionally acceptable level.  *Id.*  A governmental entity can be held liable only where it "causes the constitutional violation."  *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).  Liability for a constitutional violation exists only where the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee.

An official policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999).  Nothing in Kruel's allegations suggests the existence of any policy regarding food service other than the act of hiring of Trinity Service Group.  However, as the Supreme Court has made clear, a single act by a decisionmaker does not constitute a policy.  *Board of Comm'rs of Bryan Cty, Ok. v. Brown,* 520 U.S. 397, 404 (1997).  "As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Id.*

The next method of establishing municipal liability is through the existence of an unofficial custom.

> [A] plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin v. City of Indep., Mo.*, 829 F.3d 695 700 (8th Cir. 2016) (citation and internal quotation marks omitted). Kruel has not alleged Defendant Holloway had actual knowledge or notice of the alleged pattern of unconstitutional acts of Trinity. No plausible official capacity claim has been stated against Defendant Holloway.

Kruel has also asserted an individual capacity liability claim against Defendant Holloway. The "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability." *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995) (citation omitted). Supervisors are liable under § 1983 only "for their personal involvement in a constitutional violation . . . or when their corrective inaction amounts to 'deliberate indifference' or 'tacit authorization' of the violative practices." *Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir. 1993). Here, Kruel has not alleged Defendant Holloway was involved in the food service, was aware of the deficiencies in the food service, or in any way authorized the alleged violative practices. No plausible individual capacity claim against Defendant Holloway has been stated.

A private corporation, working pursuant to a contract, acts under color of state law in providing food to prisoners. *See e.g., Miller v. Summit Commissary,* No. 5:20-cv-05033, 2020 WL 1529373, 1 (W.D. Ark. March 30, 2020). To sustain a claim against Defendant Trinity Service

Group, Kruel must show "there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006) (citation omitted). The Court believes Kruel has adequately alleged the existence of significant recurring deficiencies in the diet to constitute an unofficial custom. For purposes of pretrial screening, the Court believes a plausible claim has been asserted against Trinity.

### D. Unsanitary Conditions of Confinement

Pretrial detainees "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (cleaned up). "In considering whether the conditions of pretrial detention are unconstitutionally punitive, we review the totality of the circumstances of a pretrial detainee's confinement." *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010).

Kruel has brought this claim against Defendants Banta, Couch, Hobelman, and Natural State Pest Control. Despite having been given explicit instructions stating he must link each Defendant's conduct to the alleged constitutional violation, Kruel has asserted no factual allegations against the Defendants he has identified on this claim. Liability under § 1983 requires both personal involvement and a casual connection to the alleged unconstitutional conduct. No plausible claims have been asserted against Defendants Banta, Couch, Hobelman, and Natural State Pest Control.[2]

---

[2] It has been held that a company does not become a state actor for purposes of establishing § 1983 liability merely by providing extermination services to a detention facility. *See e.g., Payne v. Knox,* No. 3:11-cv-610, 2012 WL 898798, *2 (N.D. Fla. Feb. 14, 2012) (companies hired to provide pest control services to a jail are not state actors for purpose of § 1983).

## V. CONCLUSION

Accordingly, it is recommended that:

- All claims regarding verbal abuse and threats be dismissed. This dismisses all claims against Defendants Ward, Moore, and Gage;

- All claims against Defendant Holloway be dismissed;

- All unconstitutional conditions of confinement claims **except the claims regarding food service** be dismissed. This dismisses all claims against Defendants Banta, Couch, Hobelman, and Natural State Pest Control.

This leaves for later resolution Kruel's due process claim against Defendant Ross and his official capacity claim regarding food service against Trinity Service Group. By separate order, the Second Amended Complaint will be served on these Defendants.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**Status of Referral:** This case should remain referred for all matters not recommended for dismissal in this Report and Recommendation.

**RECOMMENDED** this 8th **day of October 2024**.

/s/ *Christy Comstock*
HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE